and Johnson. I'm turning to the next case on our calendar, United States v. Murray and Johnson. Good morning. Good morning, Your Honors. May it please the Court. I'd like to discuss with the Court this morning the issue of sufficiency of the evidence and rely on the briefs for the remaining issues. Now, as to Count 1, it's a RICO conspiracy, and as we know, one of the elements is there must be a pattern of racketeering, and a pattern must be demonstrated by at least two predicate acts. The argument here is that the jury only found, at most, one predicate act based on the verdict sheet. It had a number of categories to choose from. The only category it selected was a drug category, and the critical aspect of the question is that it was in the disjunctive. It said, do you find that he either distributed, possessed with intent to distribute, or conspired with possession with intent to distribute, and that or is the critical word. So, the question is, and the most I submit that we can say was found by the jury here is one act, one predicate act. When we start going beyond that, and what the government- Counselor, I was initially taken with your argument until I read the jury charge, and I don't see how you can reconcile your argument with the charge that was actually given in this case, which more than once instructed the jury that two or more acts and offenses from the same category, if constituting a pattern, is sufficient. Now, what you have here is a general verdict on count one of guilty or not guilty. You have these other interrogatories, which I'm sure we're going to talk about, but in order to comply with the judge's instructions, and we must assume that the jury did comply with the instructions, they were permitted to find a verdict of guilty on count one on the basis of two or more acts and offenses from the same category if constituting a pattern. Now, your argument is sufficiency nominally, but I do not understand how you can say on this record that there was inadequate evidence to find a pattern based solely on narcotics offenses, multiple narcotics offenses. Yes. Yes, Judge Kaplan, and good question. And what I submit there, this is a different and unique case, and how it is different and unique is usually when a case like this is brought to the Second Circuit, there's no question about what the jury finding was. It's guilty. But here we have special interrogatories which create this situation. When you have the question of sufficiency, then the rule is that this court does not engage in credibility determinations at all. It can't. That's for the district court. That's for the jury. Here, when there's a question that arises about what the jury found, and you look at the question, and it would be a correct answer, supposing the jury only found one crime, supposing it was conspiracy, which is one crime, it doesn't fulfill the two-predicate act requirement. So here, when the government comes forward and says, look at all of the evidence that we provided to the jury, what is it asking, then, this court to do? It's asking this court, then, to make credibility determinations, and in this case in particular, credibility determinations that we can tell from the other findings the jury refused to make. So can I just clarify what I'd like to understand, and I think I do understand what the nature of your claim is here, which I think is different from what most of the time when someone comes up on a criminal appeal and they argue sufficiency of the evidence, I understand that claim to be, look, the jury found me guilty of crime X. If you look at that evidence, no rational juror could have found me guilty beyond a reasonable doubt. My understanding is that that is not the claim you're raising here, not what I think of as our shorthand sufficiency, and I'm reading your point heading here is there was insufficient evidence after Davis that the jury found two or more predicate acts of I think, and that's why I look forward to your clarifying. I think what I hear you saying is we can't tell what the jury found here. Effectively, there is no verdict or there's no meaningful verdict. Or let me just throw another wrinkle in, and I apologize, what I would think of as a Yates error, an instructional error, which is the jury was instructed on multiple theories of guilt. One of them, it now turns out was invalid, for example, because of Davis or some other development in the case law, or maybe we're just wrong in the law to begin with. And we can't discern which of two permissible bases for conviction there was, and therefore, we have a Yates versus United States error. But those are three completely different types of claimed errors. And I wonder if you could just help me understand a little bit more specifically, which variant of error are you contending is the problem here? Judge Nardini, I view this as a combination of two things. I think the starting point is what did the jury find? And that then is determined by the question. And we have a special interrogatory here, and therefore, that's governing what the jury found. And that's special. Let's assume, going back to Judge Kaplan's, that they checked off the box saying we find drug category predicates. And we know from the jury instructions that they were told that two or more predicates can get you there, can get you over the line to a conspiracy. In which case, it looks to me like the jury verdict form or the jury verdict, what the jury found. And if you accept that premise, and I know you don't, but if you were to accept that premise, what would your subsequent argument be? Well, I guess Judge Nardini, I wouldn't accept the premise. One moment. The argument is based on the question that's in the disjunctive. And therefore, if this court were to accept that at most we can say it was a finding of one crime, let's say conspiracy, then the issue of... And who cares how strong the evidence is? Yes. You're saying the jury just never found it. Yes, and it's actually also not for this court to engage in credibility determinations, particularly when you can read from this verdict that, for example, just let me throw it out there, drug quantity. The drug quantity, how the jury answered drug quantity here, the government's contention was that Mr. Murray was heavily involved in drugs and that there was evidence against him passing the threshold quantities, significant quantities. And the jury said no on all of that. Jury, I submit, can only have gotten to the point of saying no when they rejected the government's evidence of its witnesses supporting Mr. Murray's drug activity. Therefore, as I understand it, that's not a permissible analysis for an appellate court. Each verdict, each count is considered independently of each other. Ever since Holmes's decision, and I forget the name of the case, but it's one of those great old cases of American law, says that the jury has a perfect right to return inconsistent verdicts. And I'm familiar with it because in the United States versus Gailani, where the jury acquitted on 282 of 283 counts, and this argument was made, how can you possibly find that he conspired to blow up the embassy and find him not guilty of 282 murders? Holmes is the answer. Yes, you're absolutely right. This is the exception. This case is the exception to that general rule. And it's this court's decision in Pierce. The reason is that the argument, we're not looking here, and I'm not asking the court to look at count one in conjunction with count four, which was also a conspiracy count. You're only looking at count one. And this court in Pierce's recent decision said, if there's an inconsistency between the verdict of guilt and a special interrogatory within that count, within the same count, then there's, I think, a way to characterize it, insufficient evidence that the jury had not- What's the inconsistency? Let me accept for the sake of argument your premise. What's the inconsistency on count one? Yeah. Well, in count one, if you look at the questions on the verdict sheet, it says first, were they guilty or not guilty? There's a check for guilty for all of them. Then there are a number of questions. They said not proven, not proven, but we get to the drug question. And this is in the disjunctive. This is the one they checked proven. Then there is a question after that. If you check this proven, it asks, what are the drug type and quantities for each? Now, for Johnson and Green, the jury checked the highest amount, which were the threshold quantities pursuant to the statute. Here, we're talking about quantity and type being an element of the crime. And as apprendee, it has to be found by the jury. And here's the special interrogatory for it. For Murray, they left it blank. Is quantity necessary, a necessary element of the crime of conspiracy to distribute or possess with intent to distribute drugs? Yes. As charged here, yes, because in the indictment, it is charged as the threshold quantities. And I point to count four. It's the same problem. And I see my time is well up. I would just also direct the court's attention. There's an argument on count two dealing with contention of lack of knowledge to support aiding and abetting, lack of knowledge that Mr. Murray knew that Johnson was specifically intending to assault and attempt to murder the rival gang members. He wasn't told. He just drove him to pick up that assault rifle and drove him back to the chicken restaurant thinking they were going to a flea market. Well, no, and here's the thing. Yes, obviously, he knew. He knew there was a gun. And he knew that there was testimony that right before they left the chicken restaurant, Mr. Johnson made a little gun shape with his hand and pointed at the guy that he later came back and shot with a gun. But how could Mr. Murray have possibly guessed what could have happened? Well, I think you have an uphill battle there. OK, it's in the brief. I appreciate I understand the counterside. It's certainly Mr. Murray's position that there's insufficient evidence on that. Thank you. Thank you, counsel. You have returned reserved one minute for rebuttal. Thank you. Yes, thank you, Judge Pooler, and may it please the court. My argument will focus on the first point we raise concerning ballistics evidence. Specifically, our concern is that when permitting an expert to testify about a foundationally valid comparison method, assuming this would be foundationally valid, courts should not allow witnesses to testify to a level of certainty that the empirical evidence does not support. And specifically, the PCAST report at page 19 refers to terms like chances of a match being wrong or vanishingly small or essentially zero or negligible or a practical impossibility. Now, if one looks at the AFTE standards, which were applied in this case and really are the game in town across the United States when it comes to matching ballistics found at a crime scene with test fires, the key term is sufficient agreement. Sufficient agreement, according to Detective Fox, who was the expert in this case, means, though, essentially whatever he says it means. And he says, particularly page 963 of the transcript, which was the Daubert hearing, there's no manual that's going to define what I determined to be sufficient agreement. And indeed, that's the case. As Judge Garifas in the Shipp case and other judges have found, the definition is completely circular. Counsel, would you address, Mr. Levchuk, as I understood Detective Fox's testimony, and I'm going to get the acronym wrong, he was questioned about the CMS standard, which requires at least six consecutive lines of striations to match. And he said that that is not the basis on which he issues his opinion, but it is it would be a minimum baseline that his, in other words, his testimony would be based on an even greater level of agreement. Then, again, I'm getting the acronym wrong. I think it's CMS. So would you just tell us, it seems as though in this case, at least, we're not dealing with a free floating indeterminate level of agreement. But we're dealing with a firearm examiner's testimony that the evidence that was being admitted here meets or exceeds that level of certainty. So could you maybe address that? Well, yes. And the CMS recommendations, like the ATFE approach or AFTE approach generally, talk about matching striations. But there's really no scientific test has ever established that striations created by tool marks in a firearm can ever be matched precisely. Our National Science Organization, the National Academy of Sciences, back in 2009, expressed serious concern about this. And in fact, I think Judge Garifas addressed CMS, the CMS method, in his opinion. And it essentially suffers from the same methodological issues that the AFTE method does generally, which is it all comes back to sufficient agreement. Now, CMS essentially says, Judge Nardini, well, you need at least sufficient agreement as to six striations. But it still doesn't say what specific agreement is. And if I could go on, the way specific agreement is defined in the AFTE standards and the way it testified to both a cadaver hearing and a trial, and I direct the court to the transcript, page 2361, sufficient agreement means a practical impossibility that another firearm could have made the same impressions on ballistics evidence. There is no science to support that. And it's important because when Judge Garifas, in his decision admitting the evidence, he basically said, the way I see it, he's not going to, Detective Fox will not testify to any level of certainty. But that finding is simply wrong because AFTE itself, the standard, which I quote in footnote five of the reply brief, it requires a level of certainty. That is to say- Did the jury hear that? Yes, the jury heard it on page 2361 of the trial transcript. Ms. Nichols asked Detective Fox to define sufficient agreement, and he defined it in terms of a practical impossibility that another firearm could have made these impressions. The issue there is simply that that is an incredibly high standard. The PCAST report at page 19 equates the terms practical impossibility with other terms, which go well beyond what the science supports. So I think that's what Judge Garifas is concerned about. And I think a spate of recent decisions, which we cite even those predating the PCAST report. Counsel, you also have reserved one minute for rebuttal. Thank you, Your Honor. Let us turn to the government. Let me start where we just finished, counsel. Um, if you don't have the ballistics report, what happens to the verdict sheet? Sorry, Your Honor. Can you can you repeat that question? I said, if they don't have the ballistics report, what happens to the verdict sheet? To the verdict sheet, Your Honor? Well, I mean, the convictions. Yes, Your Honor. May it please the court. Allison Nichols for the United States. And I also represented the United States in the district court. Your Honor, I think that if the ballistics testimony had been excluded here, there would have been no results different in the convictions. So, you know, of course, it's our position that Judge Garifas did not err in admitting this testimony. However, in the event that there was error, it was absolutely harmless. The ballistics match in this particular case was a very small piece of the evidence against Johnson and Murray, with respect to count two. It's important for the court to understand that the firearm in question was not recovered from either Johnson or Murray, as is often the case. Rather, it was recovered in approximately 2013 from another member of the BHB gang. And it was only through a cooperating witness testimony that that firearm that was recovered from the other gang member was linked to Murray. The cooperating witness testified that he observed yet a fourth person pick up the firearm from Murray and give it to the person who was initially then arrested with it. So the answer to the court's question is that there would be no difference here in the jury's verdict if the ballistics evidence had been excluded. But I think it's also important for the court to understand that Judge Garifas did not commit error in allowing Detective Fox to testify. I want to just clarify a few of the terms that have been used in the brief and by Johnson today. The term practical impossibility is one that comes from the AFTE definition of sufficient agreement. And it is the standard by which firearms examiners must look at the evidence in order to determine that there is a match. And so Judge Garifas understood and applied that definition in allowing Detective Fox to testify. What some other courts have done in terms of limiting the expert's ability to state conclusions to a particular degree of certainty has been to sort of prevent them, as they have other experts in other cases, trying to backdoor some sort of extra veneer of scientific credence to their opinions by saying things like the field has no error rate or by saying things like 100% of firearms examiners would agree with me or things of that nature. Here, what Judge Garifas understood from hearing from Detective Fox's testimony at the Daubert hearing was that when Detective Fox determines that there is a match, he is of course certain that there was a match. If he were not certain that there were a match, he would have not found a match. He would have instead found that the analysis was inconclusive. But tell us, did the district court here allow the defense to cross-examine the firearms examiner about the ballistics testimony before the jury at trial? Absolutely, Your Honor. He was cross-examined for several hours, I think, as I recall, over two days. And these questions were all raised and Judge Garifas correctly decided in evaluating the expert testimony before allowing him to testify before the jury that any weaknesses allegedly in the methodology were easily understood by a jury and proper subject of cross-examination. I'd like to turn, unless there's further questions from the court about the ballistics testimony to the question about the verdict form for Defendant Murray. I do agree with Defendant Murray today, the point that he made, that the first question is, what did the jury find? And what the jury found here is that Murray is guilty of participating in a racketeering conspiracy. And there is no allegation, as Judge Kaplan has pointed out, that the jury was improperly instructed about the elements of racketeering conspiracy, including instructions that were careful, detailed, and exactly legally correct about what it means to engage in a pattern of racketeering activity. The jury was told that they attributed no drugs to him, to Mr. Murray. I'm sorry, can I answer my question? Yes, Your Honor, they did attribute drugs to him. They just did not attribute any drug quantities to him sufficient to trigger an increase in the maximum penalties that he would face. And can you clarify for us, for racketeering conspiracy, if you have multiple B1C predicates, are those sufficient to support a racketeering conspiracy? Absolutely, Your Honor, provided that those predicates form a pattern. And the jury was correctly instructed here that in order to find a pattern, the predicates may not be isolated, they may not be disconnected, but they must be related to each other by a common scheme, plan, or motive. And that's exactly the law, Your Honor. And there is absolutely no reason for this court to even consider, much less find, that the jury did not follow those correct instructions that they were given. So in other words, the jury would have been entitled, legally, to conclude that Mr. Murray participated in a racketeering enterprise that conducted its affairs through a pattern of persistent B1C drug transactions. Absolutely, Your Honor. And if they concluded that they were uncertain whether the quantities in the aggregate rose to the, or the type of drug and the quantity rose to the level of B1B or B1A, that wouldn't matter in terms of the sufficiency of a RICO conspiracy conviction. Is that my understanding of your position? That's exactly correct, Your Honor. And not only is that possible and permissible, it is actually eminently reasonable on the evidence that the jury heard here. And I don't understand this to be at the crux of Murray's argument, but I do think that it's important to understand that the jury did hear about multiple instances of Murray's involvement in what are admittedly low quantity drug transactions. One cooperating witness testified that he purchased approximately 10 grams of heroin for resale from Mr. Murray. Another said that Murray told him that he was selling crack cocaine at a particular location, at a particular point in time, no evidence as to quantity in that testimony. And a third cooperating witness testified that he saw Murray sell approximately 10 to 20 grams of crack cocaine to another gang member. Those are obviously redistribution quantities, Your Honor, but they are low and they are not sufficient to trigger B1B or B1A weight. Counsel, as I read the case and I read the testimony, it seems to me the jury was required to put together sometimes conflicting testimony as to what happened when, by whom, to whom. You felt comfortable that the jury could do that? I'm not sure I accept the premise, Your Honor, that the testimony was inconsistent. I think that actually the witnesses in this case were broadly extremely consistent with each other as to... Well, on specifics, they were like, who wound up going to Elmira? There were two testimonies that Adams went there and someone else went to Elmira to cool off. And there was, there was, seems to me unclear who did what then. Yes, Your Honor, Adams himself testified that he went to Elmira and Rosario, who was also in Elmira, I think also testified that Adams was there. And Pat Daly was a third witness who was a cooperating witness who was part of the Elmira drug operation and identified several of the gang members who were there. I think, Your Honor, it's important to sort of peg the court's question to a particular sufficiency question. And I think that if the question is as to drug quantity and as to Johnson's participation in the Elmira drug scheme, I think there was overwhelming evidence of that. My other concern is with the shooting at the chicken spot. There was different testimony and no one actually said that Johnson shot the window out. There were, people said different things. And are you arguing that no matter what, you offered a coherent theory? Yes, Your Honor, we actually do think that the witnesses were consistent with each other as to the chicken restaurant shooting. Of course, the court is correct that they had different vantage points and so necessarily had a different account of the events based on their own personal observations and where they were standing at the time. But we don't think that any of the witnesses with respect to the chicken restaurant shooting were inconsistent with each other. Even if they were, of course, those inconsistencies are to be resolved by the jury. And I think it's important with respect to the chicken restaurant in particular that any of the witnesses who testified about it alone would have been sufficient to convict both Johnson and Murray of their participation in that shooting. Just to recap very briefly, the evidence, cooperating witness Darrell Wilson was a victim of an assault. He was beaten by Murray, excuse me, by Johnson and Jones in the weeks leading up to the shooting. And afterwards, Murray apologized to him for Johnson's actions and said that he has to do what Johnson says and reiterated that Johnson is interested in looking for members of a rival gang EGB that hangs out in the area. Wilson then saw Johnson on the evening of the shooting. And although Johnson's face was covered, he was able to see Jones was an even greater participation, participator in all of these events. He was not looking in the direction of the restaurant at the moment that Johnson let loose the shots. However, he was present for the beating that I just mentioned. He was also present when Johnson and Murray went to retrieve the firearm. He was directed by Murray to get into a vehicle to serve as a lookout prior to the shooting. And he then observed Murray and Johnson get into a different car with Johnson lying with an AK-47 firearm in the backseat of the car. So I don't think there's any inconsistency in those stories, Your Honor. Thank you. I think your time has expired. Do you want to say anything in conclusion? No, Your Honor, just in conclusion, there is no basis on the sufficiency of the evidence or on any of the rulings that Judge Gardefee made to disturb the jury's verdict in this case. Thank you, counsel. Both Mr. Lifchuck and Mr. Bryan reserve one minute rebuttal. Mr. Bryan. Thank you, Your Honor. And Judge Kaplan, Judge Nardini, your questions about the instructions to the jury and then how do they match or not match? What the question that was it's the question that controls. But then also I'd like to turn to the judge's instructions here. And there is a problem at appendix page 830. And this is the judge instructing with respect to controlled substances. If you find that one of the racketeering predicate crimes that was you will be asked to indicate on the verdict form whether the government has proven by unreasonable doubt that pattern of racketeering acts included in controlled substance offense. What that is saying to the jury is singular, a single offense you check proven on that verdict sheet. And there's more than that. And I would direct the court's attention to my brief at pages 32 and 33 in which I summarize what the judge, how the judge instructed in it. And as I read it, and maybe this is a real problem, that the sense I got from reading it, first the judge went through what are the four categories of crimes. And then the judge, and it says you have to find, and correctly so, that at least two predicate crimes be unanimous as and as to which two predicate crimes they were. And the problem then comes is then the court saying, quote, the verdict form will include a section in which you will indicate which, if any, of the predicate crimes you unanimously find the defendant committed or agreed. Well, as I read that, and I think the jury read it, is that it's actually the category that is the predicate crime as the verdict sheet lays it out. So what was expected here was for the jury to check twice, at least twice, categories. They did. They checked. Well, they checked racketeering conspiracy. That was count one. And then they checked, let's see what else they did. This is all about count one. Then they found them guilty of conspiracy to distribute controlled substances. Yes, but the question is, go on. Well, the question, Judge Pooler, there is, for the jury to check that question, they only had to find one controlled substance crime. The problem, Mr. Bryan, is that in order to check guilty on count one, they had to find two predicate acts, which the judge said could be in the same category. Here's the problem, is that the question doesn't then correspond with that instruction. And the finding is the question. These are special interrogatories. Actually, case law of this court dealing with when you're talking about pattern, the good practice and usual practice, you need special interrogatories for the jury to specify, should they have been written? If the jury was being asked within a category, are you saying that there's more than one? There needed to be additional questions. There were not. So the most that can be said here is that the jury found one. We don't know beyond that. That's the basic thing. I'm not saying no, it's that we don't know. And so we can't say the jury did find more than one because we can only say at most there's one, and that's not enough. Thank you, counsel. I'm turning to Mr. Levchuk, who also has one minute for rebuttal, on behalf of Johnson. You're muted. Unmute. Unmute. Yes, thank you, Your Honor. I would simply return in response to what Ms. Nichols said, in terms of the way the evidence was presented, to again, page 2361 of the trial transcript. The jury was told that it was practically impossible for these bullets found at the scene and casings found at the scene to have been fired from any other rifle other than the one in evidence. That's what the jury was told. That's what she argued on pages 33, 34, and 35 of the transcript. As we've argued at length in our briefs, there is no scientific basis to apply a term like practical impossibility to the testimony offered by Detective Fox. And if that testimony comes in, then there's really the gatekeeping function that a district court is supposed to adhere to. As I think Justice Scalia said in his concurrence in Kumho Tire, there's nothing left of the gatekeeper function. Counsel, you heard my question to the government. That is, if the shell casing testimony, if the ballistics testimony did not come in, did they still have, could they still make their case? She says, yes. Do you disagree? Needless to say, I say no, because that case comes down to the testimony of Darrell Wilson and Raishan Jones. Raishan Jones, as I believe Ms. Nichols just said, and conceded, was not looking in the direction of the shooting at the time the shots were fired. Darrell Wilson identified Johnson based on his gait and the way he walked and said the shooter's face was covered. You take those two witnesses out, any error in admission of the ballistics testimony could not be harmless. And it was insufficient evidence absent the ballistics testimony. Essentially, the ballistics testimony allowed the government to launder essentially peculiarly inconsistent witnesses that were presented in this case. Witnesses who would not have been believed but for the veneer that the ballistics testimony gave them. Thank you, counsel. Thank you all. All counsel will reserve on this case. I appreciate the argument.